UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

HENRY SCOTT,

**REPORT AND
RECOMMENDATION**

              Plaintiff,

12-CV-613
(FJS/VEB)

          V.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]

              Defendant.
_____

## I. INTRODUCTION

In May of 2004, Plaintiff Henry Scott filed an application for supplemental security income ("SSI") benefits and disability insurance benefits ("DIB") under the Social Security Act. Plaintiff alleges that he had been unable to work since December of 2003 due to physical impairments. The Commissioner of Social Security denied Plaintiff's application.

Plaintiff commenced this action *pro se* seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned on June 26, 2013, for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 16).

---

[1] On February 14, 2013, Carolyn W. Colvin took office as Acting Social Security Commissioner. The Clerk of the Court is directed to substitute Acting Commissioner Colvin as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure

## II. BACKGROUND

The procedural history may be summarized as follows:

Plaintiff applied for SSI benefits and DIB on May 18, 2004. (T at 66, 70).[2]  The applications were denied initially Plaintiff requested hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at testified at a hearing conducted on January 18, 2005, by ALJ Elizabeth Koennecke. (T at 214-44).  On July 18, 2005, ALJ Koennecke issued a decision denying Plaintiff's application (the "ALJ's first decision"). (T at 32-38).  Plaintiff requested review by the Social Security Appeals Council, which was denied on November 9, 2005. (T at 334-39).

On January 11, 2006, Plaintiff commenced an action in the United States District Court for the Northern District of New York, which was assigned case number 06-CV-40.  The Commissioner of Social Security thereafter moved to remand the case pursuant to sentence four of 42 U.S.C. § 405 (g).  On April 9, 2007, the Honorable David R. Homer, United States Magistrate Judge, granted the Commissioner's motion as unopposed and remanded the case for further administrative proceedings.

In an Order dated July 23, 2007, the Appeals Council vacated the ALJ's original decision and remanded the matter to the ALJ for further development of the record, a new hearing, and a new decision. (T at 352-57).

A hearing was held on October 6, 2008, with Plaintiff appearing from prison via videoconference. (T at 517-58).  On December 9, 2008, ALJ Koennecke issued a decision denying Plaintiff's application for benefits (the "ALJ's second decision") (T at 268-79).

---

[2]Citations to "T" refer to the Administrative Transcript. (Docket No. 11).

Plaintiff sought review by the Social Security Appeals Council. On March 9, 2009, while that request for review was pending, Plaintiff commenced an action in the United States District Court for the Northern District of New York seeking judicial review. The case was assigned number 09-CV-284. On February 7, 2012, the Honorable Frederick J. Scullin adopted a Report and Recommendation issued by this Court and dismissed the case without prejudice to Plaintiff's ability to file a subsequent action after the Appeals Council acted on his request for review.

On February 10, 2012, the Appeals Council denied Plaintiff's request for review, making the ALJ's second decision the Commissioner's final decision. (T at 245-47).

Plaintiff, once again acting *pro se*, timely commenced this action on April 11, 2012. (Docket No. 1). The Commissioner interposed an Answer on August 3, 2012. (Docket No. 10). Plaintiff filed a Reply on September 4, 2012. (Docket No. 13). The Commissioner filed a Brief on October 18, 2012. (Docket No. 14). Plaintiff filed a Brief on November 30, 2012. (Docket No. 15).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

For the reasons that follow, it is recommended that the Commissioner's motion be granted, Plaintiff's motion be denied, and that this case be dismissed.

---

[3]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

# III. DISCUSSION

## A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford

the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[4]

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at

---

[4]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

In her second decision (which has become the Commissioner's final decision), ALJ Koennecke found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2008, and had not engaged in substantial gainful activity since December 15, 2003, the alleged onset date. (T at 271).  She determined that Plaintiff's mild lumber degenerative disc disease (facet arthrosis) and polysubstance dependence (severe until 2005 and in remission thereafter) were "severe" impairments under the Act. (T at 271-74).  However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 274).

The ALJ found that Plaintiff retained the residual functional capacity to occasionally lift and carry 20 pounds, lift and carry 10 pounds frequently, sit/stand/walk without limitation in an 8-hour workday, provided he was able to sit or stand at will. She determined that Plaintiff could engage in occasionally bending, flexion, and extension, but could not

6

repetitively bend, twist, flex, or extend. The ALJ noted that Plaintiff was capable of performing the basic mental demands of unskilled work. (T at 274-77).

The ALJ determined that Plaintiff could not perform his past relevant work as a utility workers, factory worker, warehouse worker, laborer, cleaner, counselor, or gym teacher, (T at 277). Considering Plaintiff's age (47 years old on the alleged onset date), education (high school), work experience (some skills acquired), and RFC, the ALJ found that there were jobs in significant numbers in the national economy that Plaintiff could perform. (T at 277-78). As such, the ALJ concluded that Plaintiff had not been under a disability from December 15, 2003 (the alleged onset date), through December 9, 2008 (the date of the ALJ's second decision), and was not entitled to benefits. (T at 278-79). As noted above, the ALJ's second decision became the Commissioner's final decision on February 10, 2012, when the Appeals Council denied Plaintiff's request for review. (T at 245-47).

### 2. Plaintiff's Claims

Plaintiff argues that the Commissioner's decision should be reversed. In his *pro se* submissions, Plaintiff contends that the ALJ's determination is not supported by substantial evidence. Plaintiff also requests consideration of evidence that was not previously provided to the Commissioner.

In evaluating Plaintiff's pleadings, this Court is mindful that a *pro se* litigant's submissions must be construed liberally and interpreted "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir.2006). Moreover, "[i]n pro se cases, a reviewing court must perform a 'searching investigation' of the record to ensure that the claimant's rights were protected." Maestre v. Apfel, No. 96 Civ. 8273, 1998 WL 477950, *4 (S.D.N.Y. Aug. 13, 1998) (quoting Robinson v. Secretary

of Health & Human Servs., 733 F.3d 255, 258 (2d Cir.1984)) (other citation omitted).

This Court will accordingly address each of the pertinent aspects of the ALJ's decision in turn and then review the request for consideration of new evidence.

### a. Severity of Impairments

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." Gibbs v. Astrue, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. Miller v. Comm'r of Social Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman v. Shalala, 895 F.Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March

19,1999) (quoting <u>Bowen v. Yuckert</u>, 482 U.S. 137, 154 n. 12 (1987)).

The ALJ found that Plaintiff's mild lumbar degenerative disc disease (facet arthrosis) and polysubstance dependence (severe until 2005 and in remission thereafter) were severe impairments. (T at 271).

Plaintiff alleged liver cancer as a severe impairment, but the ALJ noted that the record did not contain any evidence to substantiate this diagnosis or allegation. (T at 273). In his brief, Plaintiff points to a January 2008 liver biopsy, but the biopsy was reported to be "uneventful." (T at 511). Plaintiff alleged hearing problems. but an August 2003 hearing evaluation indicated normal hearing in the left ear and mild loss in the right ear. (T at 126).

Although Plaintiff was diagnosed with hepatitis C, there was no medical evidence of disabling limitations arising from this condition, with Plaintiff's primary complaint being dry, itchy skin. (T at 439).

With respect to Plaintiff's mental health, the ALJ cited and correctly applied the "special technique."[5] The technique first requires a determination of whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Then, the ALJ must rate the degree of the claimant's functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *See* 20 C.F.R. § 404.1520a(c)(3).

These areas are rated on a scale of "none, mild, moderate, marked, and extreme."

---

[5]When evaluating the severity of mental impairments, the Regulations require the ALJ to apply a "special technique" at the second and third steps of the review, in addition to the customary sequential analysis. <u>Kohler v. Astrue</u>, 546 F.3d 260, 265-66 (2d Cir.2008) (citing 20 C.F.R. § 404.1520a).

20 C.F.R. §§ 404.1520a(c)(4); 416 .920a(c)(4).  A mental impairment is generally found not severe if the degree of limitation in the first three areas is mild or better and there are no episodes of decompensation. § 404.1520a(d)(1). The ALJ must document "a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 404.1520a(e)(2).

Plaintiff was diagnosed in July of 2005 by Dr. Carl Spencer with bipolar disorder with psychotic symptoms, alcohol dependence in remission, and cocaine abuse in remission. (T at 435).  The ALJ sought additional records to clarify Plaintiff's mental health limitations (T at 273-74), but Dr. Spencer declined to say anything more than that he had treated Plaintiff and that Plaintiff demonstrated an ability to abstain from substance abuse. (T at 212).  The ALJ reviewed the record and found that Plaintiff had no limitation with regard to activities of daily living, which was consistent with Plaintiff's report that he could attend to personal needs, care for his three year old daughter, prepare simple meals, perform laundry, and manage his finances. (T at 88-92).  The ALJ noted that Plaintiff was convicted of rape, burglary, and sexual assault, which certainly indicates an extreme limitation in the area of social functioning.  However, there was no evidence that this conduct was caused by Plaintiff's bipolar disorder. (T at 274).  Plaintiff was maintained in the general prison population, which suggests an ability to maintain social functioning, albeit in a highly controlled environment. (T at 274).  The ALJ found that Plaintiff had only a mild limitation with regard to maintaining concentration, persistence, and pace. (T at 274).  Dr. Carrie Jones, a treating physician, described Plaintiff has being able to "follow complex commands." (T at 213).

Accordingly, this Court finds that substantial evidence supports the ALJ's severity

10

assessment. Moreover, because the ALJ concluded that Plaintiff had established other impairments considered severe under the Act and continued with the sequential analysis, any arguable errors in the step two findings were harmless. See <u>Maziarz v. Secretary of Health & Human Services</u>, 837 F.2d 240, 244 (6th Cir. 1987)("[T]he Secretary found that Maziarz suffered from the severe impairment of coronary artery disease, status post right coronary artery angioplasty and angina pectoris. Accordingly, the Secretary continued with the remaining steps in his disability determination. Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."); <u>McCartney v. Commissioner of Social Sec.</u>, Civil Action No. 07-1572, 2009 WL 1323578, at *16 (W.D.Pa. May 8, 2009)("Even if the Court was to find that the ALJ did err in excluding headaches from the list of severe impairments, any such error was harmless because the ALJ found other severe impairments at step two and proceeded through the sequential evaluation on the basis of Plaintiff's severe and non-severe impairments."); <u>Portorreal v. Astrue</u>, No. C.A. 07-296ML, 2008 WL 4681636, at *3 (D.R.I. Oct. 21, 2008).

### b. The Listings

Impairments listed in Appendix 1 of the Regulations are "acknowledged by the [Commissioner] to be of sufficient severity to preclude" substantial gainful activity. Accordingly, a claimant who meets or equals a Listing is "conclusively presumed to be disabled and entitled to benefits." <u>Dixon v. Shalala</u>, 54 F.3d 1019, 1022 (2d Cir.1995); <u>see</u> 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an impairment(s) that meets

or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.").

The claimant bears the burden of establishing that his impairments match a Listing or are equal in severity to a Listing. See Naegele v. Barnhart, 433 F. Supp.2d 319, 324 (W.D.N.Y. 2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements.").

To show that an impairment matches a Listing, the claimant must show that his impairments meet all of the specified criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); 20 C.F.R. § 416.925(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. Sullivan, 493 U.S. at 530. To satisfy this burden the claimant must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926(b). Abnormal physical findings "must be shown to persist on repeated examinations despite therapy." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B). Further, the medical reports must indicate physical limitations based upon actual observations and/or clinical tests, rather than the claimant's subjective complaints. Id.

Here, the ALJ considered whether Plaintiff's lumbar disc disease met the requirements of Listing § 1.04 and concluded that it did not. (T at 274). The ALJ's determination was supported by substantial evidence. Listing § 1.04 requires one of the following: (a) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there

is involvement of the lower back, positive straight-leg raising test (sitting and supine); (b) spinal arachnoiditis; or (c) lumbar spinal stenosis resulting in pseudoclaudication.

Dr. Richard Zogby, a treating physician, described Plaintiff's range of motion as normal, with negative supine straight leg testing bilaterally. (T at 129, 135). He assessed a strain in Plaintiff's lower back. (T at 129). Plaintiff had no numbness, tingling, or weakness. (T at 138). Dr. Carrie Jones likewise assessed a lumbar sprain/strain. (T at 200). There was no evidence of spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication.

The ALJ also considered whether Plaintiff met the requirements of Listing § 12.04 (affective disorders). (T at 274). However, to meet that Listing, the claimant's mental health problems must result in at least two of the following: (a) marked restriction of activities of daily living; (b) marked difficulties in maintaining social functioning; (c) marked difficulties in maintaining concentration, persistence, or pace; or (d) repeated episodes of decompensation, each of extended duration. As outlined above, the ALJ's analysis of Plaintiff's mental health limitations was supported by substantial evidence. Other than the issue of social functioning (which was significant given Plaintiff's criminal record, but apparently not directly related to his mental health issues), there was no evidence of marked limitations in the other domains or repeated episodes of decompensation.

Lastly, the ALJ determined that Plaintiff's substance abuse did not meet the requirements of Listing § 12.09 (substance abuse). (T at 274). This Listing requires proof of behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system. Given the consistent evidence that Plaintiff's substance abuse was in remission after 2005, the ALJ's conclusion in this regard was

adequately supported.

   c.   **RFC**

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making an RFC determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y.1990).

The ALJ found that Plaintiff retained the RFC to occasionally lift and carry 20 pounds, lift and carry 10 pounds frequently, and sit/stand/walk without limitation in an 8-hour workday, provided he was able to sit or stand at will. She determined that Plaintiff could engage in occasional bending, flexion, and extension, but could not repetitively bend, twist, flex, or extend. The ALJ noted that Plaintiff was capable of the basic mental demands of unskilled work. (T at 274-77).

The RFC determination was supported by substantial evidence. Dr. Jones, a treating physician, opined that Plaintiff should not lift more than 20 pounds, was limited with regard to flexion/extension, and could "[s]it and stand as tolerated." (T at 210, 213, 434).

14

Dr. Jones indicated that Plaintiff did not have any limitation with respect to prolonged sitting, other than the need to alternate between sitting and standing. (T at 434). Dr. Jones recommended that Plaintiff receive job training for a "sedentary to light duty position." (T at 201).

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[6]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

Here, the ALJ afforded controlling weight to Dr. Jones's opinion when formulating her RFC assessment. (T at 275-77).

---

[6]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

Although Dr. Zogby, another treating physician, opined that Plaintiff was "temporarily totally disabled," (T at 133, 136), his treatment notes described Plaintiff as having normal gait and station, mild-to-no tenderness, no spasm, and normal range of motion in the lumbar spine. (T at 129-36). Moreover, the ultimate decision regarding disability is reserved to the Commissioner. See 20 C.F.R. § 404.1527(e); SSR 96-5p. In addition, Dr. Zogby's disability finding was made in the workers' compensation context, which involves different standards than the Social Security disability standards. See Rosado v. Shalala, 868 F.Supp. 471, 473 (E.D.N.Y.1994); see also Crow v. Comm'r of Soc. Sec., No.01-CV-1579, 2004 WL 1689758, at *3 (N.D.N.Y. July 20, 2004) (the ALJ was not required to adopt a treating physician's opinion that Plaintiff was "totally" disabled, in part, because "the opinions were rendered in the context of [claimant's] W[orkers'] C[ompensation] claim, which is governed by standards different from the disability standards under the Social Security Act").

The ALJ's decision to afford greater (and, ultimately, controlling) weight to the opinion of Dr. Jones was adequately supported by the evidence and within her discretion. "Conflicts in evidence . . . are for the Commissioner to resolve." White v. Comm'r of Social Security, No. 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) (citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir.1983)). Where, as here, there are conflicts in the medical evidence, it is the ALJ's decision that controls as factfinder. Id. If the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." Id.

### d. Credibility

A claimant's subjective complaints are an important element in disability claims, and must be thoroughly considered. See See Ber v. Celebrezze, 332 F.2d 293, 298, 300 (2d Cir.1964). Further, if claimant's testimony regarding pain and limitations is rejected or discounted, the ALJ must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F. Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the

plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1.  [Plaintiff's] daily activities;
2.  The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3.  Precipitating and aggravating factors;
4.  The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5.  Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6.  Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7.  Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified as follows: He injured his back on the job in October of 2003. (T at 226). His back is in "constant pain" and he is forced to lay down most of the time, with heat applied to his back. (T at 233). Fatigue is nearly constant. (T at 233). He has pain and difficulty using his right wrist. (T at 234-35). He cares for his three-year old daughter periodically and has joint custody with the child's mother. (T at 236). Prolonged walking increases his back pain. (T at 237). He is limited with regard to lifting, bending, twisting, and prolonged standing. (T at 535). He can lift up to 8 pounds. (T at 536). Plaintiff experiences mood swings and agitation. (T at 541). He has battled depression. (T at 544).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible. (T at 276). This assessment was supported by substantial evidence. Dr. Jones reported that Plaintiff's subjective complaints exceeded the objective findings. (T at 200). Treatment was generally conservative, including Advil, Tylenol, and hot showers for pain relief. (T at 210, 537). Plaintiff reported lifting weights as exercise. (T at 438-39, 536). Contemporaneous treatment notes indicated that Plaintiff consistently described himself as feeling "good" or "great." (T at 438-48, 539).

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec'y, Dep't of Health & Human Servs, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999).

There seems to be little doubt that Plaintiff lives with pain, as the record documents frequent complaints in that regard. However, "disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction

with other impairments, as to preclude any substantial gainful employment. Otherwise, eligibility for disability benefits would take on new meaning." Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983). Moreover, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence [of disability]." 42 U.S.C. § 423(d)(5)(A).

This Court finds that the ALJ properly exercised her discretion to evaluate the credibility of Plaintiff's testimony and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir.1984). The ALJ's decision should therefore be upheld.

### e. Step Five

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential
> evaluation process described above, the Commissioner, under
> appropriate circumstances, may rely on the medical-vocational

guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

Here, the ALJ elicited the testimony of Victor Alberegi, a vocational expert. The ALJ described a hypothetical claimant with Plaintiff's age, work experience, and RFC and asked the vocational expert whether there is work that exists in significant numbers in the national economy that such a claimant could perform. (T at 551). The vocational expert identified several jobs that such a hypothetical claimant could perform: small product assembler, small electrical parts assembler, and counter rental clerk. (T at 551-53). The vocational

expert also testified that those jobs exists in significant numbers in the national economy, (T at 551-53).

As set forth above, the ALJ's RFC determination was supported by substantial evidence. Accordingly, the ALJ reasonably relied on the vocational expert's testimony in finding that Plaintiff could perform jobs that exist in significant numbers in the national economy, (T at 277-78). See Magee v. Astrue, No. 5:05-CV-413, 2008 WL 4186336, at *20 (N.D.N.Y. Sept. 9, 2008)("If the factors set forth in the hypothetical are supported by substantial evidence, then the vocational expert's testimony may be relied upon by the ALJ in support of a finding of no disability.")(citing Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 799 (6th Cir.1987)).

### f.    VESID Evidence

The Social Security Act provides that a district court may remand a case to the Commissioner to consider additional evidence that was not included as part of the original administrative proceedings. See 42 U.S.C. § 405(g) (sentence six) ("The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.").

This type of remand, commonly referred to as a "sentence six remand," is only appropriate if new, non-cumulative evidence presented to the District Court should be considered by the Commissioner and if the claimant can establish good cause for having failed to present the evidence during the original administrative proceedings. See Lisa v. Sec'y of Dep't of Health and Human Servs., 940 F.2d 40, 43 (2d Cir.1991).

In the Second Circuit, courts employ a three-prong test to determine whether a

sentence six remand is warranted. <u>Tirado v. Bowen</u>, 842 F.2d 595, 597 (2d Cir.1988). First, the evidence must be "new" and not merely cumulative of evidence in the administrative record. <u>Id.</u> (citing <u>Szubak v. Secretary of Health & Human Services</u>, 745 F.2d 831, 833 (3d Cir.1984)). Second, the new evidence must be "material," *i.e.* "it must be relevant to the claimant's condition during the time period for which benefits were denied and probative." <u>Id.</u> (citing <u>Cutler v. Weinberger</u>, 516 F.2d 1282, 1285 (2d Cir.1975)). The "materiality" prong further requires a finding that there is a reasonable possibility that the new evidence would have changed the outcome before the Commissioner. <u>See</u> <u>Jones v. Sullivan</u>, 949 F.2d 57, 60 (2d Cir.1991). Third and finally, the plaintiff must demonstrate good cause for failing to present the evidence earlier. <u>Lisa</u>, 940 F.2d at 43.

In the present case, Plaintiff has provided records from the New York State Vocational and Educational Services ("VESID") program, which were not submitted to the Commissioner. (Docket No. 13-1). As a threshold matter, it must be noted that the 2006 records pre-date the ALJ's December 2008 decision and Plaintiff has not articulated any good cause for failing to provide these records during the administrative proceedings. Moreover, although the records indicate that Plaintiff had some "[p]ossible barriers to employment" based on his subjective complaints, the VESID counselors generally described several areas of strength in terms of possible employment and their plan was for Plaintiff to seek employment, albeit on a part-time basis. In any event, even if the VESID evidence was arguably deemed to support Plaintiff's claims of disabling limitations, the ALJ would not have been bound to accept that evidence, particularly in the face of the other medical evidence of record, including the assessments of Dr. Jones, a treating physician. As such, there is no reasonable probability that the introduction of this evidence during the

administrative proceedings would have changed the Commissioner's decision. For this reason, and based upon the failure to show good cause, this Court recommends that Plaintiff's request for a sentence six remand be denied.

## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. It is clear that the ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of Plaintiff's treating provider, the consultative examiner, and the non-examining consultants, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering her decision that Plaintiff is not disabled. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, this Court recommends that the Commissioner be GRANTED judgment on the pleadings and that Plaintiff's motion for judgment on the pleadings be DENIED.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

24

Dated:   September 12, 2013

        Syracuse, New York


## V. ORDERS

        Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. <u>See</u> <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

September 12, 2013

Victor E. Bianchini
United States Magistrate Judge